```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

ANTHONY CURIALE,              )
                              )
     Plaintiff,               )
                              )
     v.                       )    Case No. 2:21-cv-54
                              )
HARTFORD LIFE AND ACCIDENT    )
INSURANCE CO.,                )
                              )
     Defendant.               )
```

## OPINION AND ORDER

Plaintiff Anthony Curiale brings this case pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, appealing the termination of his long-term disability ("LTD") benefits by Defendant Hartford Life and Accident Insurance Company ("Hartford"). On June 8, 2022, the Court granted Plaintiff's motion for judgment in his favor on the administrative record. ECF No. 24. Now before the Court is Plaintiff's motion for attorney's fees, costs, and interest. ECF No. 30.

Portions of the motion, including the fees currently owed based on Plaintiff's attorney's hours of work and hourly rate, are unopposed. Hartford contests only Plaintiff's argument for an enhanced attorney's fee, the terms for awarding future benefits, and the appropriate rate for prejudgment interest. Plaintiff asks the Court, through counsel, to also review the

reasonableness of his contingency fee agreement.  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## Background

Familiarity with the underlying facts, as set forth in the Court's June 8, 2022 Opinion and Order, is presumed.  The Court previously determined that Plaintiff is entitled to certain long-term disability benefits under the Hartford policy.  ERISA provides that Plaintiff shall therefore receive payment for such benefits, as well as attorney's fees and costs.  See 29 U.S.C. §§ 1132(a)(1)(B), 1132(g).  Plaintiff has requested judgment in the amount of $66,312 for past benefits, $16,667.50 for attorney's fees, and $1,052 in costs.  Hartford has no objection to any of those calculations.

There remain several issues in dispute.  The first involves a disagreement between Plaintiff and his attorney about the reasonableness of their contingency fee contract.  Plaintiff also argues for enhanced attorney's fees under ERISA.  Hartford takes no position on the contingency fee question, and objects to the enhanced fee request.  Plaintiff's counsel finds little support for an enhanced fee but has offered the argument on his client's behalf.  Counsel also submits that the contingency fee agreement is reasonable.

Hartford further objects to Plaintiff's assertion that future benefits must be based upon a showing by the insurer that Plaintiff's medical condition has changed.  Hartford argues that benefits must instead be determined according to the terms of the policy.  Finally, Hartford contends that any prejudgment interest should be based upon the federal post-judgment interest rate, and not upon the federal prime rate as argued by Plaintiff.

As set forth more fully below, the Court may review Plaintiff's contingency fee agreement for reasonableness, but any formal challenge to the legality of that agreement must be raised in a separate action.  The Court also sees no basis for an enhanced fee payment by Hartford.  The Court agrees with Hartford that the policy must dictate entitlement to any future benefits, and with Plaintiff as to the appropriate rate for prejudgment interest.  The parties shall submit a final proposed Order of Judgment consistent with the Court's conclusions.

## Discussion

### I. Contingency Fee Agreement

According to the briefing submitted by Plaintiff's counsel, Plaintiff believes his contingency fee agreement is unreasonable.  The agreement provides his attorney with a fee equal to one-third of all recovered benefits, both past and

3

future. Plaintiff has not submitted any argument or evidence on his own behalf with respect to this issue.

Counsel reports that the maximum recovery under the Hartford policy for past and future benefits, not including any awarded interest, is $184,200. The corresponding attorney's fee would be approximately $61,400. Under the ERISA fee-shifting provision, Hartford must pay $16,667.50 in attorney's fees based upon counsel's litigation-related hours worked and hourly rate. *See* 29 U.S.C. 1132(g)(1); *Peterson v. Continental Casualty Co.*, 282 F.3d 112, 121 (2d Cir. 2002) (holding that a district court may not award pre-litigation costs). Pursuant to the contingency fee agreement, the statutory fee payment would be credited against, and not additional to, the one-third amount owed by Plaintiff to his attorney. ECF 30-5.

Without argument from the Plaintiff on this question, the Court is reluctant to rule on the enforceability of a private contingency fee agreement. *See Rosquist v. Soo Line Railroad*, 692 F.2d 1107, 1111 (7th Cir. 1982) (noting that a contingency fee agreement is "[a]n agreement between two freely consenting, competent adults [and] will most often be controlling; courts rarely interfere with such contracts"). Nonetheless, courts generally retain "ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d

4

Cir. 2003); *see also Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973) ("[I]n its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees."). That ancillary jurisdiction includes the power to "inquire into fee arrangements . . . to protect the client from excessive fees." *In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005).

On its face, the contingency fee agreement between Plaintiff and his attorney is reasonable. The agreement entitles counsel to one third of the ultimate recovery, which amount is a standard in the industry. *See, e.g., In re Zyprexa Prod. Liab. Litig.*, 424 F. Supp. 2d 488, 495 (E.D.N.Y. 2006) ("The trend in the states is to limit contingent fees in substantial cases to 33⅓% or less of net recovery where fees are large."); Lester Brickman, *The Market for Contingent Fee-Financed Tort Litigation: Is It Price Competitive?*, 25 Cardozo L. Rev. 65, 91 (2003) (describing the one-third contingent attorney's fee as "standard"). Moreover, the Court finds that even at the highest conceivable payment (absent interest), the contingent fee will not result in a "windfall" for counsel. *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002). Counsel submits that he has spent over 80 hours representing his client at the administrative level and before this Court. ECF No. 30 at 10. Depending upon the ultimate benefits recovery, counsel's

hourly rate assuming no further work on the case could be nearly $800 per hour. *Id.* That level of compensation, in the context of other benefits cases, has been held to be reasonable. *See, e.g., Fields v. Kijakazi*, 24 F.4th 845, 854 (2d Cir. 2022) (upholding hourly rate of $1556.98 in Social Security benefits case and concluding that "it would be foolish to punish a firm for its efficiency and thereby encourage inefficiency"); *Besignano v. Berryhill*, No. 12-CV-6123 (DLI), 2017 WL 1319817, at *2 (E.D.N.Y. Apr. 6, 2017) (upholding an hourly rate of $810.74); *Joslyn v. Barnhart*, 389 F. Supp. 2d 454, 457 (W.D.N.Y. 2005) (upholding an hourly rate of $891.61).

In finding the contingency fee agreement reasonable on its face, the Court notes that "a contingency fee is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990); *see also Blizzard v. Astrue*, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) ("[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners."). The Court also notes counsel's reported experience with ERISA disability claims, and the significant result achieved for his client.

Finally, the contingency fee amount is not limited to the amount ordered by the Court pursuant to the ERISA fee-shifting provision. In *Venegas v. Mitchell*, 495 U.S. 82, 86-87 (1990), the Supreme Court held that an award of attorney's fees under a federal fee-shifting statute does not dictate the fee the plaintiff must pay his attorney pursuant to their fee arrangement. *See also Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 231 (S.D.N.Y. 2016) ("Under *Venegas*, the prevailing attorney's fee thus may be higher than that awarded from the losing party."). In the ERISA context, as explained by the United States Court of Appeals for the Tenth Circuit, "it is clear that the attorney fees' provision of [ERISA] was not intended to place a cap on the amount that a plaintiff's attorney may collect for his efforts. The award of attorney's fees in an ERISA case is simply intended to offset some or all of the plaintiff's costs because of the behavior of the defendant, and it in no way affects the contractual relationship between a plaintiff and his attorney." *Joos v. Intermountain Health Care, Inc.*, 25 F.3d 915, 918 (10th Cir. 1994). Accordingly, the fees to be paid by Hartford do not serve as a cap on the amount Plaintiff owes his attorney.

In finding the contingency fee agreement facially reasonable, the Court offers no opinion on questions surrounding its legal enforceability. A contingency fee agreement may be

7

hourly rate. The Court has reviewed those figures and concluded that counsel's assessed fee is, in fact, reasonable.

Whether Plaintiff has a contingency fee arrangement with counsel does not impact the calculation of a reasonable fee, as the United States Supreme Court has held that "enhancement for contingency is not permitted under [federal] fee-shifting statutes." *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("where counsel receives a fee award pursuant to a fee-shifting statute authorizing a reasonable fee, we presume that the unenhanced lodestar is a reasonable fee").

While the lodestar method is not "conclusive in all circumstances," enhanced fee awards beyond the lodestar calculation are "rare and exceptional." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010). An enhancement may not be based upon either the complexity of the case or the quality of an attorney's performance, as those factors are both included in the lodestar calculation. *Id.* at 553. An enhancement may be considered when, for example, "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted" or where "an attorney's performance involves exceptional delay in the payment of fees." *Id.* at 555-56. No such circumstances have been demonstrated here. *See*

9

*Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012) (holding that the burden is on the party seeking attorney's fees). Accordingly, the Court will adhere to the "strong presumption" that the lodestar figure is reasonable, *Perdue*, 559 U.S. at 554, and Plaintiff's request for an enhanced fee is denied.

### III. Determination of Future Benefits

Plaintiff's briefing suggests that future LTD benefits will be due unless there is a showing that his medical condition has improved. For support, Plaintiff cites the Court's June 8, 2022 Opinion and Order. The Court reasoned that because Hartford had withdrawn benefits without changing its policy, there must have been a change in Plaintiff's condition – yet the evidence did not support finding such a change. ECF No. 24 at 19. Indeed, the Court noted consistency in the reports from Plaintiff's health care providers over a period of two decades. *Id.*

The Court's opinion did not shift the burden of proving disability. Nor did the Court endorse an award of benefits based upon anything other than the terms of the policy. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing plan participant to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101

(2013) ("The plan, in short, is at the center of ERISA."). The Court will not authorize any relief that is inconsistent with the terms of the governing plan, and to the extent Plaintiff's motion seeks such relief, the motion is denied.

**IV.   Prejudgment Interest Rate**

A district court has broad discretion to decide whether to award prejudgment interest. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). In exercising such discretion, the Court must consider the need to fully compensate the Plaintiff for damages he suffered, the fairness and relative equities of the award, the remedial purpose of the statute, and "such other general principles as are deemed relevant by the court." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (quotation marks omitted). In an ERISA case, prejudgment interest "serve[s] as compensation to a plaintiff for the lost use of money wrongly withheld; such awards may not penalize the defendant." *Fairbaugh v. Life Ins. Co. of N. Am.*, 737 F. Supp. 2d 68, 89-90 (D. Conn. 2010). As the Plaintiff in this case has been denied benefits since 2017, the Court finds that he is entitled to prejudgment interest in an amount that compensates him for the lost use of that money. *See id*.

The parties do not agree about the appropriate rate of interest to be applied. Plaintiff asks the Court to apply the federal prime rate, which since 2017 has fluctuated between

11

3.25% and 5.5%, though generally closer to 5%.  *See* https://www.jpmorganchase.com/about/our-business/historical-prime-rate; https://www.wsj.com/market-data/bonds/moneyrates.  The federal prime rate is currently 5.5%.  *Id.*  Hartford argues for application of the federal prejudgment interest rate, which was 2.14% when the Court issued Judgment on June 8, 2022, and 3.62% as of September 9, 2022.  *See* https://www.casb.uscourts.gov/post-judgment-interest-rates-2022.

Because prejudgment interest is meant to compensate for the loss of use of funds, the Court finds the federal prime rate most appropriate.  The prime rate of 5.5% is closer to the rate Plaintiff would have paid to borrow funds over the prejudgment time period, and is not so high as to penalize Hartford for denying benefits during that time.  *See generally Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria,* 603 Fed. Appx. 1, 5 (D.C. Cir. 2015) ("This court has repeatedly concluded that the use of the prime rate in the award of prejudgment interest reflects an appropriate exercise of the district court's discretion"); *see, e.g., Spears v. Liberty Life Assurance Co. of Bos.*, No. 3:11-CV-1807 (VLB), 2020 WL 2404973, at *6 (D. Conn. May 12, 2020) (granting prejudgment interest at prime rate on claim for long-term disability benefits); *Rasile v. Liberty Life Assurance Co.*, No. 03 Civ. 4316 (NRB), 2004 WL 1444886, at *1 (S.D.N.Y. June 28, 2004) (calculating prejudgment

12

interest at the prime rate and observing that prime rate "has frequently been applied by courts in ERISA cases"). Plaintiff's motion for prejudgment interest at the federal prime rate is therefore granted.

## Conclusion

For the reasons set forth above, Plaintiff's motion for award of benefits, attorney's fees, costs, and prejudcment interest is granted in part and denied in part. The parties shall submit a joint proposed Order of Payment, consistent with this Opinion and Order, within 30 days.

DATED at Burlington, in the District of Vermont, this 21st day of September, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge